**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| INTERVET, INC., Plaintiff, v. MILEUTIS, LTD., Defendant. | : | Civil Action No. 15-1371 (FLW)(TJB) **OPINION** |

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), certain counts of the Counterclaim filed by Plaintiff Mileutis, Inc. ("Mileutis" or "Defendant"). Specifically, Plainitff Intervet, Inc. ("Intervet" or "Plaintiff"), seeks to dismiss Count II (breach of the duty of good faith and fair dealing), Count III (negligence), Count IV (gross negligence), Count V (trade libel), and Count VI (tortious interference with prospective economic relations) of the Counterclaim, as well Mileutis's demand for consequential damages and lost profits. For the following reasons, Intervet's motion is granted in part and denied in part.

Specifically, Counts III and IV of the Counterclaim are dismissed with prejudice because they are barred by the economic loss doctrine. Counts II, V, and VI of the Counterclaim are dismissed without prejudice because these counterclaims do not adequately plead facts to show a prima facie case. Finally, Intervet's motion to dismiss Mileutis's demand for consequential damages and loss damages is denied without prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from the Counterclaim ("CC"), except where noted, and are limited to the facts relevant to the motion before the Court. This is a contract case. Mileutis is a

"clinical-stage biopharmaceutical company whose business concerns the development and commercialization of natural and novel peptides for animal and human health." CC ¶ 1. On June 12, 2008, Mileutis entered into a license agreement ("Agreement") with ScheringPlough Animal Health Corporation ("SPAH") "for the purpose of developing and marketing products for several pharmaceutical indications/applications, including, but not limited to, prevention and cure of bovine Mastitis,[1] reduction of somatic cell counts, involution, reproductive efficiency, and milk enhancement." CC ¶ 5; 17. On September 15, 2008, SPAH and Mileutis "entered into a related agreement with the Israel-United States Binational Industrial Research and Development Foundation ("BIRD") for funding assistance on the development of a product for prevention and cure of bovine Mastitis." CC ¶¶ 7, 28. Sometime thereafter, Intervet (d/b/a Merck Animal Health or "Merck AH)[2] "subsumed Schering's rights and responsibilities under the License Agreement and the BIRD Agreement (together, the "Agreements")." CC ¶ 8.

Under the Agreement, Mileutis granted Intervet a license and sublicense to develop technology and products using Mileutis's intellectual property rights for a "Commercial Purpose in the Field." CC ¶20; *see* CC ¶ 21(i)-(iv) (defining Mileutis's intellectual property under the

[1] According to the Counterclaim, "Mastitis is a common disease affecting breastfeeding women, dairy cattle and other mammals. In dairy cattle, Mastitis results in the inflammation of the mammary gland and udder tissue, and may lead to reduction in milk yield, milk quality, agony to the dairy cow, reduced reproductive performance, death and loss of revenue for dairy producers." CC ¶ 6.

[2] According to the Complaint, "Intervet is a corporation formed under the laws of the State of Delaware, and it has a principal place of business in Madison, New Jersey. Intervet is the result of a merger of the now dissolved corporation Intervet Inc. and Schering-Plough Animal Health ("SPAH") in 2009. SPAH was the surviving entity of the merger and SPAH thereafter changed its name to Intervet. Intervet currently does business as 'Merck Animal Health.' . . . Intervet is a wholly owned subsidiary of Merck & Co., Inc." Compl. ¶ 2.

Agreement). Although Mileutis claims it fulfilled all of its obligations under the Agreement, it alleges that Intervet "continuous[ly] breach[ed]" the Agreement. CC ¶¶ 29-30.

Specifically, Mileutis claims that Intervent breached the Agreements by "not performing, and/or performing in a substandard manner, scientific studies and tasks, by failing and refusing to compensate Mileutis for its costs to perform, failing to strive to and reach milestones under deadline, failing to assign knowledgeable and ethical employees to the required tasks, and failing to communicate with Mileutis about the status of critical information necessary to fulfill the requirements of the Agreements." CC ¶ 158. Mileutis also alleges that Intervet made false communications concerning the efficacy of Mileutis's technology to third parties, CC ¶¶ 141, 177, and mispresented that Intervet owned Mileutis's intellectual property. CC ¶¶ 131-36.

In February 2014, Intervet informed Mileutis that it was terminating the Agreement. CC ¶ 10. On February 23, 2015, Plaintiff filed suit against Defendant, seeking a declaration of the rights of the parties under the Agreement. On June 10, 2015, Defendant filed an Answer, along with six counterclaims for breach of contract, breach of the duty of good faith and fair dealing, negligence, gross negligence, trade libel, and tortious interference with prospective economic relations, and requested consequential damages and lost profits. On July 10, 2015, Plaintiff filed the instant motion to dismiss all of Defendant's counterclaims (except for breach of contract).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust*

*Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt*

*v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

As a preliminary matter, the Agreement contains a choice-of-law provision which provides that "all issues arising under or relating to this Agreement, including, without limitation, its construction, interpretation, breach, and damages for breach, shall be governed by and construed in accordance with the laws of the State of New Jersey[.]" Agreement § 11.05(a). Neither party asserts that another state's law should apply to the counterclaims at issue in this decision.

### A. Defendant's Counterclaims of Negligence and Gross Negligence are Barred by the Economic Loss Doctrine.

Plaintiff argues that Defendant's counterclaims for negligence and gross negligence are barred by the economic loss doctrine. In response, Defendant argues that the economic loss doctrine is not applicable where the torts involved conduct that is extraneous to the contract, such as where the breaching party owes an independent duty to the other. Def. Opp. Br. at 24-25. Here, Defendant argues Plaintiff had a duty, independent from the Agreement, to "perform its work under reasonable customs and standards for research and development of a biopharmaceutical product as recognized by the scientific community." CC ¶¶ 168, 174; *see also* CC ¶¶ 71, 105, 110, 120

"Under New Jersey law, the economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.'" *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453, 470 (App. Div.), *rev'd on other grounds*, 200 N.J. 207 (2009)). "The purpose of the rule is to

strike an equitable balance between countervailing public policies[] that exist in tort and contracts law." *Id.* (quoting *Dean*, 406 N.J. Super. at 470).

Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."). "Whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citing *Touristic Enterprises Co. v. Trane Inc.*, No. 09-2732, 2009 U.S. Dist. LEXIS 106145, at *5-6 (D.N.J. Nov. 13, 2009); *CapitalPlus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 U.S. Dist. LEXIS 54054, at *17-18 (D.N.J. July 16, 2008)). The rationale underlying the economic loss doctrine is that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have address[ed] in their agreement." *Id.* (quoting *Bubbles N' Bows, LLC v. Fey Pub. Co.*, No. 06-5391, 2007 U.S. Dist. LEXIS 60790, at *30 (D.N.J. Aug. 20, 2007)). "The existence of a duty and the scope of that duty are generally questions of law for the court to decide." *Skelcy v. UnitedHealth Grp., Inc.*, 620 F. Appx. 136, 140 (3d Cir. 2015) (citing *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (1996)).

Here, the only "independent" duty Defendant has identified is Plaintiff's "duty" to conduct itself under reasonable customs and norms applicable to a biopharmaceutical research company. However, while New Jersey law does recognize independent duties imposed by law upon doctors, lawyers, insurance brokers, and product manufacturers, *Saltiel*, 170 N.J. at 317, Defendant has

failed to cite to a single case in which a biopharmaceutical research company has been held to a standard of care, imposed by law, when conducting research and development. Indeed, this case appears substantially similar to *Saltiel*. In that case, the plaintiff asserted negligence claims against a landscape architect for preparing turfgrass specifications in a negligent manner. *Id.* at 299. In finding that no independent duty existed, the New Jersey Supreme Court observed that the defendant "possessed specific technical skills that it was obligated to apply under the contract. Its failure to do so was not a violation of an obligation imposed by law, but rather a breach of its contractual duties." *Id.* at 316-17. Similarly here, Defendant alleges that Plaintiff had specific technical skills to research and develop pharmaceutical products; Plaintiff's alleged failure to perform these tasks according to what Defendant perceives to be the "standard" that such companies should perform is not a violation of an independent duty imposed by law, but merely another way of alleging that Plaintiff breached the terms and standards imposed by the Agreement.

Accordingly, Counts III and IV of Defendant's Counterclaim, asserting negligence and gross negligence, respectively, are dismissed with prejudice as they are barred by the economic loss doctrine.

**B. Defendant's Counterclaim of Breach of the Duty of Good Faith and Fair Dealing Is Duplicative of its Breach of Contract Counterclaim.**

Plaintiff argues that Defendant's counterclaim for breach of the duty of good faith and fair dealing should be dismissed based on the failure to plead facts showing bad faith. However, Defendant argues that it "is not required to *plead* 'bad faith or intention'" to state a claim for breach of the implied covenant of good faith and fair dealing, but rather, it is only required to *prove* that Plaintiff acted with bad faith or intention at a later stage in the litigation. Def. Opp. Br. at 20 (emphasis in original). Additionally, Defendant argues that it has pled sufficient facts to show that

Plaintiff engaged in "repeated bad faith actions and inactions." Def. Opp. Br. at 21 (citing CC ¶¶ 31-153, 160-165) (emphasis in original).

Under New Jersey law, every contract includes an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). This covenant is independent of the duty to perform the express terms of the contract, and may be breached without a violation of the contract terms. *Sons of Thunder, Inc. v. Borden*, 148 N.J. 396, 423 (1997). There are "myriad forms of conduct that may constitute a violation of the covenant of good faith and fair dealing." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 225 (2005). For that reason, "[e]ach case is fact-sensitive." *Id.* As a general rule, "[a] plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *Id.* at 226 (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251, (2001)). A plaintiff may also be entitled to relief if "it relies to its detriment on a defendant's intentional misleading assertions." *Id.* (citing *Bak-a-Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129-30 (1976)). "[P]roof of 'bad motive or intention' is vital to an action for breach of the covenant." *Id.* at 225 (citing *Wilson*, 168 N.J. at 251). However, no matter what form the alleged breach of the implied covenant takes, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing a contracting party must allege that the accused acted in bad faith or engaged in 'some other form of inequitable conduct in the performance of a contractual obligation.'" *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-5072, 2009 U.S. Dist. LEXIS 72796, at *34 (D.N.J. Aug. 18, 2009) (quoting *Black Horse*, 228 F.3d at 289); *see also Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 U.S. Dist. LEXIS 32584, at *31 (D.N.J. Mar. 31, 2010) ("Under New Jersey law, a claim for breach of the duty of good faith and fair dealing requires a showing of "bad motive or intention," though at the pleading stage

all that is required is an allegation of bad faith.")  (citing *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 263 (App. Div. 2002)) (citation omitted).

Defendant is correct that it need not offer evidence to "prove" that Plaintiff acted in bad faith in the performance of the Agreement at this stage of the litigation and, at this stage in the litigation, Defendant's allegations that Plaintiff acted with bad faith, though scant, are sufficient. *See Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 263 (App. Div. 2002) (noting that a complaint adequately pled bad faith to support a claim for breach of the implied covenant where plaintiff alleged it 'suffered as a result of . . . [defendant's] bad faith" and that [defendant's] actions were 'wanton and willful and without privilege or right.'").  Like the court in *Seidenberg*, this Court notes that "[w]hether plaintiffs' proofs will meet the bad faith standard defined in *Wilson*, or even survive summary judgment, remains to be seen." *Id.*

However, Defendant's claim is deficient for a different reason.  Here, Defendant's allegations of bad faith all relate to Plaintiff's actions that Defendant alleges form the basis of its breach of contract counterclaim.  "[T]he breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002) (quoting *Bak-A-Lum*, 69 N.J. at 129).  Thus, "a '[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim.'" *Adler Eng'rs, Inc. v. Dranoff Props.*, No. 14-921, 2014 U.S. Dist. LEXIS 153497, *39 (D.N.J. Oct. 29, 2014) (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009)).  Here, all of Defendant's allegations of "bad faith" relate to actions that Defendant also claims form the basis of its breach of contract counterclaim.  *Compare* CC ¶¶ 56,

163 (alleging Plaintiff acted in bad faith by not promoting project, obtaining permits, and developing product, "thereby breaching its fundamental obligations under, as well as the spirit of, the Agreements and the implied covenant of good faith and fair dealing therein.") *and* CC ¶ 162 (alleging Plaintiff acted in bad faith by failing to "provide quality research and development in a timely, competent, ethical and professional manner" and "concealed critical information"), *with* CC ¶ 158 (alleging breach of contract based on Plaintiff's "not performing, and/or performing in a substandard manner, scientific studies and tasks, . . . failing to assign knowledgeable and ethical employees to the required tasks, and failing to communicate with Mileutis about the status of critical information necessary to fulfill the requirements of the Agreements").

Defendant cannot merely recite the same conduct it alleges for Plaintiff's breach of contract and transform such conduct into a breach of the implied duty of good faith and fair dealing by appending a conclusory label that those actions breaching the contract were also done in bad faith. Instead, Defendant must plead facts which would show, if true, that Plaintiff acted in bad faith by performing actions that, while "consistent with the contract's literal terms," were done in bad faith, with the "effect of destroying or injuring the right of [Defendant] to receive the fruits of the contract[.]"[3] *Wade*, 172 N.J. at 345 (citation omitted). Accordingly, Count II of Defendant's

[3] The Court notes that Defendant did allege that Plaintiff spread "false information about the efficacy of Mileutis's Technology," to third parties, which "played a material part in inducing third parties not to enter into commercial agreements with Mileutis," CC ¶¶ 141, 177, 179. However, the Counterclaim is silent as to whether these communications were made before or after Plaintiff terminated the Agreement in February 2014. If Defendant alleges that these communications occurred during the life of the Agreement, they may qualify as acts, made in bad faith, in the performance of the contract contract. *See Black Horse*, 228 F.3d at 88; *see also Atl. City Racing Assoc. v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 511-12 (D.N.J. 2000) ("[A] party must continue in good faith to perform its obligations under an existing contract until the final hour when termination of the contract, even pursuant to an express and absolute right to terminate, takes effect."); *Noto v. Skylands Cmty. Bank*, No. A-0322-04T3, 2005 N.J. Super. Unpub. LEXIS 408, *16-17 (App. Div. Sept. 28, 2005) ("The obligation of good faith performance of a contract, even

Counterclaim, asserting breach of the duty of good faith and fair dealing, is dismissed without prejudice.

**C. Defendant Must Plead Facts Which would Show Special Damages to Assert a Counterclaim of Trade Libel.**

Plaintiff argues that Defendant's counterclaim for trade libel should be dismissed because Defendant failed to allege special damages, false publication, and malice. Indeed, under New Jersey law, Defendant, here, must plead facts that would show the four elements to state a claim for "slander of title or product disparagement," otherwise known as "trade libel": "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e., pecuniary harm." *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977). As discussed in more detail below, Defendant has failed to adequately allege the element of special damages, but, contrary to Plaintiff's contentions, Defendant has adequately pled the elements of false publication and malice. Accordingly, Count V of Defendant's Counterclaim is dismissed without prejudice.

**i. Special Damages**

"Unlike ordinary defamation actions, an action for product disparagement requires special damage in all cases . . . . [and] because this cause of action is designed to protect the economic interests of a vendor, the plaintiff must plead and prove special damages with particularity." *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). "[T]he need to prove such special damages requires that Plaintiffs allege either the loss of particular customers by name, or a general diminution in its business, and

where it may be terminated without cause, exists up until its right of termination was actually effective.") (citation and internal quotation marks omitted), *certif. denied*, 186 N.J. 242 (2006).

extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id.* (citations and internal quotation marks omitted); *see also Patel v. Soriano*, 369 N.J. Super. 192, 249 (App. Div.) ("Traditionally, plaintiff was required to identify particular business interests who have refrained from dealing with him, or explain the impossibility of doing so. However, where requiring such identification is unreasonable, proof of lost profits resulting from breach of contract may suffice, especially where the loss is shown with reasonable certainty and where the possibility that other factors caused the loss is satisfactorily excluded."), *certif. denied*, 182 N.J. 141 (2004).

> [I]f predicating its claim on a general diminution in business, plaintiff should . . . allege[] facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales for a [period] subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

*Mayflower Transit*, 314 F. Supp. 2d at 378 (citations and internal quotation marks omitted*).*

Here, Defendant's counterclaim fails sufficiently plead the facts that are necessary to support a trade libel claim based on the "general diminution" of its business, as outlined above.[4] *Cf. Pactiv Corp.*, 2009 U.S. Dist. LEXIS 72796 at *30-31 (denying motion to dismiss because "Defendants did plead special damages with the required level of specificity to survive a motion to dismiss because they alleged lost sales and lost goodwill regarding *established* and prospective customers."); *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *121-23 (D.N.J. Mar. 31, 2009) (denying motion to dismiss where complaint adequately pled special damages based on allegation that plaintiff "lost sales to *established* customers, *existing*

[4] Although Plaintiff stresses that Defendant has not identified any customers it lost, this allegation is not necessary to plead this element of its trade libel claim, provided Defendant can plead the other facts sufficient to show a general diminution of business.

distributors dropped its product lines, and it was prevented from acquiring new customers that were also recipients of the [disparaging publication]") (emphasis added). Instead, Defendant merely avers generally that "[a]s a direct and proximate results of the trade libel of [Plaintiff], [Defendant] has incurred and will continue to suffer damages." CC ¶ 180. This allegation is insufficient. *See Zinn v. Seruga*, 2006 U.S. Dist. LEXIS 51773, *33-35 (D.N.J. July 28, 2006) ("Plaintiffs have not pleaded special damages incurred by Defendants other than a general allegation that the statements published on the website 'caused Plaintiffs to sustain damages.' Plaintiffs[] therefore fail to plead an essential element in their claim of product disparagement[.]").

**ii. False Publication**

"A plaintiff alleging trade libel must [allege] publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or otherwise to interfere with plaintiff's relations with others." *Patel*, 369 N.J. Super. at 246-47. "The communication must be made to a third person and must play a material part in inducing others not to deal with plaintiff." *Id.* at 247.

In response to Plaintiff's motion to dismiss, Defendant has identified two communications it has alleged in its Counterclaim that it claims satisfy this element of its trade libel claim: (1) that Plaintiff claimed it owned Defendant's technology, CC ¶¶ 131-36, and (2) that Plaintiff "knowingly and recklessly disseminated false and disparaging statements and allegations about Mileutis's Technology to third parties, including but not limited to, false information about the efficacy of Mileutis's Technology." CC ¶¶ 141, 177.

With respect to the first communication, Plaintiff correctly highlights the allegation that Plaintiff claimed to own Defendant's technology was made to the Joint Advisory Board, CC ¶ 136, which was made up of "representatives of the Parties." CC ¶ 33. Therefore, this communication

was not made to a third party, and does not satisfy this element of a trade libel claim. *See Patel*, 369 N.J. Super. at 247. With respect to the second communication, while Defendant must eventually provide evidence of the content of Plaintiff's alleged communication concerning the efficacy of Defendant's technology, and identify the third parties these statements were made to in order to prove its claim, this Court finds that Defendant's allegation that Plaintiff communicated "false information about the efficacy of Mileutis's Technology," to third parties, which "played a material part in inducing third parties not to enter into commercial agreements with Mileutis," CC ¶¶ 141, 177, 179, is sufficient at this stage of the litigation to plead this element of its trade libel counterclaim.

**iii. Malice**

"To allege malice in a trade libel or commercial disparagement claim, the claimant must allege facts to suggest that the accused knew the statements were false or that they were 'published with reckless disregard for their falsity.'" *Pactiv Corp.*, 2009 U.S. Dist. LEXIS 72796, at *29 (quoting *Floorgraphics, Inc. v. News America Mktg. In-Store Serv., Inc.*, No. 04-3500, 2006 U.S. Dist. LEXIS 70834, at *20 (D.N.J. Sept. 29, 2006)). As discussed above, it is irrelevant whether Defendant's allegation concerning Plaintiff's false claims of ownership of Defendant's technology were made with "malice," because they are not alleged to have been made to third parties. With respect to Defendant's claim that Plaintiff made false communications regarding the efficacy of Defendant's technology, Defendant has alleged that Plaintiff made such false communications, yet knew of (and "praised") the efficacy of its technology. CC ¶ 64. Assuming that this allegation is true (both as to the efficacy of the technology and Plaintiff's knowledge), this allegation is sufficient to plead the element of malice.

Accordingly, Defendant has sufficiently alleged that Defendant made communications disparaging the efficacy of its technology with "malice."

In sum, however, because Defendant has failed to allege special damages, Count V is dismissed without prejudice.

**D. Defendant Must Plead Facts Which would Show a Reasonable Expectation of Economic Benefit to Plead a Claim of Tortious Interference with Prospective Economic Benefit.**

Plaintiff argues that Defendant's counterclaim for tortious interference with prospective economic advantage should be dismissed based on Defendant's failure to plead a reasonable expectation of economic benefit. Defendant argues that it is not required at this stage of the litigation to identify specific prospective customers or contracts with which the Plaintiff allegedly interfered.

Under New Jersey law, the claim of tortious interference with prospective economic relations has five elements:

> (1) a plaintiff's . . . reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citations omitted). "In this type of claim, a plaintiff . . . must allege facts giving rise to some reasonable expectation of economic advantage." *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 U.S. Dist. LEXIS 99538, at *10 (D.N.J. July 16, 2013) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989)). "However, mere hope that the plaintiff would have entered into some future arraignment with the prospective customer is not sufficient." *Id.* at *10-11 (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 184 (3d Cir. 1997)).

Defendant is correct that, under the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a), it is not required to identify specific lost customers or contracts at this stage of the litigation. *See Slim CD, Inc. v. Heartland Payment Sys.*, No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *11-12 (D.N.J. Aug. 22, 2007). However, in *Slim CD*, the subject of the tortious interference claim – sale of the company itself – was clearly more than speculative since the company was able to be sold. Defendant's allegation regarding its reasonable expectation of economic advantage is not the same, since the product Defendant ultimately wished to sell was still allegedly in development. *See* CC ¶ 182 ("Mileutis has a reasonable expectation of economic advantage with regard to use of Mileutis's Technology and Intellectual Property to develop the Product, as defined in the License Agreement and other animal and human products, including but not limited to, treatment for uterine infections."). Indeed, Defendant bases its claim of tortious interference on the assertion that Plaintiff prevented Defendant "from raising the necessary funds to develop any new products," CC ¶¶ 137, 184, which, in turn, would require successful development and regulatory approval before any economic advantage could be realized; that allegation of economic benefit is simply too speculative to qualify as a reasonable expectation.

Accordingly, Count VI of Defendant's Counterclaim, asserting tortious interference with prospective economic benefit, is dismissed without prejudice.

**E. Consequential Damages and Lost Profits**

Plaintiff argues that Defendant's claim for lost profits must be denied based on the Agreement's "Limitation on Liability" provision, Section 9.05, because (1) Defendant has failed to plead a counterclaim for an intentional tort,[5] and (2) the Agreement explicitly provides, in

[5] In light of this Court's dismissal without prejudice of Defendant's counterclaim for trade libel (Count V) and tortious interference with prospective economic advantage (Count VI), the Court will not address this argument at this time.

Section 9.05, that lost profits are not recoverable for breach of contract and negligence claims. Defendant, in turn, argues that (1) the Agreement's limitation on consequential damages only applies to third-party claims; (2) Section 9.05 only applies to lost profits that are consequential in nature, rather than direct damages; and (3) Section 9.05 of the Agreement does not bar damages that are the result of Plaintiff's reckless or intentional conduct.

When interpreting contractual language, a court's "paramount task is to ascertain and give effect to the contracting parties' objectively manifested intent." *Windsor Secur., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 667 (3d Cir. 1993) (citing *Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1009 (3d Cir. 1980)). "The strongest external sign of agreement between contracting parties is the words they use in their written contract." *Id.* (quoting *Mellon Bank*, 619 F.2d at 1009); *see also Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. Appx. 82, 85 (3d Cir. 2006) (the "plain language" of the agreement must guide the court's interpretation).

Section 9.05, entitled "Limitation on Liability," provides: "Neither Party shall be liable to the other Party for any special or consequential damages, whether based upon lost goodwill, lost resale profits, work stoppage, or impairment of other goods or arising out of breach of warranty, breach of contract, strict liability or negligence." Defendant argues that Section 9.05's location in the Agreement, as the fifth subsection of the Article IX of the Agreement, entitled "Indemnification," indicates that it applies only to indemnification for third-party claims, and does not apply to the first-party claims at issue here. However, Section 11.08(a) of Article XI of the Agreement, entitled "Captions, Counterparts, and Construction," provides, in relevant part: "The captions of the Agreement are for convenience of reference only and shall not affect, define, describe, extend or limit the scope or intent of this Agreement, including, without limitation, any

provision of the construction or interpretation of this Agreement." Accordingly, the mere fact that Section 9.05 appears under the caption "Indemnification" is not dispositive on this issue.

Given that the Section 11.08(a) of Article XI or the Agreement expressly prevents the Court from limiting Section 9.05 to third-party claims based upon its location in Article IX, this Court concludes that Section 9.05 of the Agreement is ambiguous. Under New Jersey law, "a contract is ambiguous 'where the contract is susceptible of more than one meaning.'" *Sumitomo Mach. Corp. of Am., Inc. v. Allied Signal Inc.*, 81 F.3d 328, 332 (3d. Cir. 1996) (quoting *Briggs v. United Shoe Machinery Corp.*, 92 N.J. Eq. 277, 287 (Err. & App.), *cert. denied*, 254 U.S. 653 (1920)). Here, Section 9.05 could be read either to apply to bar the recovery of consequential and special damages for both first and third-party claims, or to serve only as a carve-out of liability for such damages from the previous indemnification provisions included in Article IX.

Accordingly, Defendant's motion to dismiss is denied without prejudice so that the parties may conduct discovery to show the circumstances and intentions of the parties in agreeing to Section 9.05 of the Agreement.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part. Specifically Counts III and IV of the counterclaim are dismissed because they are barred by the economic loss doctrine. Counts II, V, and VI of the counterclaim are dismissed without prejudice because these counterclaims do not adequate plead facts that show a prima facie case of each counterclaim, respectively. Finally, Plaintiff's motion to dismiss Defendant's demand for consequential damages and loss damages is denied without prejudice.

Dated: February 24, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge