*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :        Civil Action No. 15-1371(FLW)
INTERVET, INC.,                               :
                                              :        **OPINION**
                        Plaintiff,            :
                                              :
        v.                                    :
                                              :
MILEUTIS, LTD.,                               :
                                              :
                        Defendant.            :
_____       :

**WOLFSON, United States District Judge**:

Plaintiff Intervet, Inc. ("Intervet" or "Plaintiff") appeals from the Magistrate Judge's Order dated August 18, 2016, granting Defendant Mileutis, Ltd.'s ("Mileutis" or "Defendant") motion for leave to amend counterclaims. In her Order, the Magistrate Judge permitted Defendant to amend Counterclaims Two (Breach of Covenant of Good Faith and Fair Dealing), Three (Trade Libel) and Four (Tortious Interference). Because I find that the Magistrate Judge's decisions are neither contrary to law nor clearly erroneous, they are **AFFIRMED**.

## BACKGROUND

The disputes on this appeal were the subject of a previous motion to dismiss filed by Plaintiff; thus, the facts of this case were extensively recounted by the Court in its opinion, dated February 24, 2016 (the "Dismissal Opinion"), resolving that motion. I will incorporate the factual background section of that Opinion here, and reference it where appropriate.

As a brief background, Plaintiff brought this declaratory judgment action seeking to clarify its rights under a licensing and development agreement, and a funding contract. The purpose of these Agreements is to permit Intervet to develop a product for the prevention and cure of bovine

mastitis, an infection that occurs in dairy cow breast feeding, by utilizing Mileutis's technology. In July 2015, the Court issued an opinion granting Plaintiff's motion to dismiss Defendant's Counterclaims Counts Two through Six. Specifically, Counts Three (negligence) and Four (Gross Negligence) were dismissed with prejudice; the remaining Counts, i.e, Count Two (breach of the duty of good faith and fair dealing, Count Five (trade libel), and Count Six (tortious interference with prospective economic relations), were dismissed without prejudice. Thereafter, Defendant moved before the Magistrate Judge to amend those causes of action dismissed without prejudice. After motion practice, the Magistrate Judge granted Defendant's motion. Plaintiff's appeal followed.[1]

## DISCUSSION

### I.    Standard of Review

#### A.    Magistrate Judge Appeal

A district court reviews decisions on nondispositive matters by a magistrate judge under the "clearly erroneous or contrary to law" standard. *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 67 (D.N.J. 2000); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72. A decision is clearly erroneous "when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citation omitted). A decision is contrary to law when it misinterprets or misapplies the law. *Id.* Under this standard, "the magistrate judge is accorded wide discretion," *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992), and "the party filing the [appeal] bears the burden of demonstrating that the

---

[1]    I will consider the parties' arguments on each of the Counterclaims separately, and as such, discussions of the Magistrate Judge's decisions will be set forth in more detail, below.

magistrate judge's decision was clearly erroneous or contrary to law." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

Importantly, an appeal of a nondispositive motion to amend, in this district, courts have consistently declined to apply a *de novo* standard to motions, even when denial of leave to amend is premised upon futility. *See Frazier*, 966 F.2d at 816; *see e.g.*, *U.S. v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 314 n. 5 (D.N.J. 2009) ("[A] determination of futility does not require a determination of the merits, and may only serve as the basis for denial of leave to amend where the proposed amendment . . . advances a claim that is legally insufficient on its face . . . . Thus, [the] determination of futility [is] not a determination on the merits. . . . Accordingly, [the magistrate judge's] decision was not dispositive. Because [it] was not dispositive, the clearly erroneous or contrary to law standard of review applies.") (citation and quotations omitted); *Miller v. Beneficial Management Corp.,* 844 F. Supp. 990, 997 (D.N.J. 1993); *Am. Fire and Cas. Co. v. Material Handling Supply, Inc.*, No. 06-1545, 2007 U.S. Dist. LEXIS 60786 (D.N.J. Aug, 16, 2007); *Falzo v. Cnty. Of Essex*, No. 03-1922, 2005 U.S. Dist. LEXIS 19468 (D.N.J. Aug. 31, 2005). Accordingly, the Court will apply the "clearly erroneous or contrary to law" standard in reviewing the Magistrate Judge's decision, here. *See Simoni v. Meridian Health Sys.*, No. 11-2758, 2014 U.S. Dist. LEXIS 33145, at *8 (D.N.J. Mar. 14, 2014).

## B. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." However, a motion to amend the complaint may be denied where there is undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.[2]

---

[2] Plaintiff does not dispute that there is no undue delay or prejudice. Rather, Plaintiff's sole basis on this appeal is that Defendant's newly asserted Counterclaims are futile.

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

"In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington*, 114 F.3d at 1435. A motion to dismiss under that Rule may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007); *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads actual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions are not entitled to the same assumption of truth, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* To determine if a complaint meets the pleading standard, the court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quotation omitted).

## II. Tortious Interference of with Prospect Economics Relations

To reiterate briefly, under New Jersey law, the claim of tortious interference with prospective economic relations has five elements:

> (1) a plaintiff's . . . reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citations omitted).

The parties' dispute on this appeal centers on the first element. Indeed, I dismissed Defendant's tortious interference counterclaim because Defendant failed to plead that it had a reasonable expectation of a prospective economic advantage. I reasoned that Defendant's previous conclusory allegation that Plaintiff prevented Defendant "from raising funds to develop new products" is too speculative to qualify as a reasonable expectation.

In its Amended Counterclaims ("AC"), Defendant avers that it has a reasonable expectation of economic advantage with regard to "obtaining investors and/or collaborators in and/or with Mileutis's Technology and Intellectual Property to research and/or develop the Products . . . ." AC, ¶ 185. And, Intervet "intentionally, wrongfully, and without justification or excuse interfered with Mileutis's prospective economic relations with third parties by, among other things, falsely claiming that Mileutis's Technology and Intellectual Property were owned by [Intervet], that Mileutis's Technology does not work and by otherwise disseminating false and disparaging statements." *Id.* at ¶ 186. Defendant alleges that there was a reasonable probability that if Intervet had not intentionally interfered, Defendant would have been "able to enter into third-party agreements to gain necessary financing for research and/or development of several new products." *Id.* at ¶ 187. In that regard, as examples, Defendant identifies specific investors who withdrew from their negotiations with Defendant because of the alleged interference from Intervet. *Id.* at ¶¶ 142-154; *see, e.g.*, ¶ 143 ("prospective investors told Mileutis that they could not invent in Mileutis's product because the Technology was too similar to what [Intervet] was developing . . . . Upon information and belief, [Intervet] knowingly and recklessly had disseminated the false statement that it owned the Mileutis Technology to these investors."); ¶ 144 ("Mileutis was caused to lose a valuable and substantial investment during the term of the Agreements, from a global

alternative asset firm, because, upon information and belief, when that global asset firm conducted its due diligence, [Intervet] made false and disparaging statements and allegations about the efficacy of Mileutis's Technology. In fact, this prospective investor later advised Mileutis that it would not proceed with the expected investment because [Intervet] 'is not taking the project seriously.'"); ¶ 149 (another interested investor at an animal health company cancelled all meetings with Mileutis because Intervet allegedly informed that prospective investor that Mileutis's Technology does not work, knowing full well that it did work).

Plaintiff argues that those new allegations, *i.e.*, a loss of prospective investors, failed to cure the deficiencies, because investor agreements are not akin to an economic advantage. Plaintiff maintains that no reasonable economic benefit could be realized since Defendant would still have to develop other approved products before Defendant could begin receiving any economic gains. The Magistrate Judge disagreed, and held that by alleging that Defendant was securing investment contracts, Defendant had sufficiently alleged that it was in "pursuit of business." The Magistrate Judge found that under a claim for tortious interference of prospective economic advantage, Defendant need not allege actual profits that would be realized to sufficiently plead the first element, but rather, an allegation of loss of business pursuits, such as investor contracts, suffices. I agree.

The gravamen of Plaintiff's argument centers on its insistence that the pursuit of investment capital, or a loss of such an investment, cannot be a basis for tortious interference. For support, Plaintiff argues that this Court has already held in its previous Opinion that Defendant's allegation of lost opportunities to raise funds for research and product development is not sufficient. Plaintiff's interpretation of my ruling in this context is too narrowly drawn. I found that because Defendant's Original Counterclaim's allegations of prospective economic benefits were too

6

speculative, Defendant failed to state a claim. However, upon amending the Counterclaims, Defendant alleges that the loss of certain investors[3] amounts to a lost economic benefit. Those investor-related allegations were not present in the Original Complaint, and thus, the Court did not have the occasion to decide the legal issue raised here by Plaintiff, *i.e.*, whether a loss of prospective investors can be a basis for tortious interference. Based on those newly asserted averments, I find that the Magistrate Judge did not err when she found that Defendant has cured the speculative nature of its previous counterclaim.

Indeed, I disagree with Plaintiff's legal position that the loss of prospective investment contracts cannot be a basis for tortious interference. Plaintiff has not cited any authority for that proposition. In fact, I have not found any New Jersey state or federal cases that has so narrowly construed the first element of a tortious interference claim. The Magistrate Judge's decision was not clearly erroneous when she found that the Supreme Court of New Jersey has broadly interpreted economic advantage as any "business pursuit." *See Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751 (1989). And, a loss of investors that are allegedly necessary to Defendant's research and development of a particular product can be a business pursuit, particularly since Defendant claims that it, largely, is in the business of producing new products. Thus, I, too, am not persuaded that the New Jersey Supreme Court would confine the tortious interference claim to only commercial activities that could directly produce some economic benefits, i.e., profits. Accordingly, the Magistrate Judge's decision to permit Defendant to amend Counterclaim-Count Four is not clearly erroneous or contrary to law.

---

[3] Mileutis identifies four investors that it lost due to Intervet's libelous statements: 1) a global alternative asset firm; 2) an animal health company and 3) one of its shareholders, a businessman and investor; and 4) another animal health company. See AC, ¶¶ 138-154. For confidentiality reasons, Mileutis has explained that it did not name those investors in its AC. Rather, Mileutis would do so during discovery under the protection of a confidentiality order.

**III.    Libel**

This Court previously dismissed Defendant's libel counterclaim because it failed to adequately plead special damages; all other elements of libel were pled sufficiently.[4]  I explained that Defendant's threadbare allegations that it would continue to suffer damages as a result of Plaintiff's alleged libel cannot meet the heightened pleading requirements for the element of special damages.  In its AC, Defendant now alleges that "Intervet knowingly and recklessly disseminated false and disparaging statements and allegations about Mileutis's Technology to third parties," and those misrepresentations "played a material part in inducing third parties not to enter into commercial agreements to invest in and/or collaborate with Mileutis and harming Mileutis's good will and business reputation."  AC, ¶¶ 181-82.  Importantly, in pleading special damages, Mileutis alleges that, as a research-and-development company, it relies upon investors, and that as a result of Intervet's wrongful conduct, Mileutis lost potential investors.  *See*, *supra*.  The Magistrate Judge found that loss of investor income qualifies as a pecuniary loss under trade libel.

On this appeal, Plaintiff argues that allegations of lost investment income cannot meet the special damages element because this type of income is not an ascertainable monetary loss.  The law is clear that "[u]nlike ordinary defamation actions, an action for product disparagement requires special damage in all cases . . . . [and] because this cause of action is designed to protect the economic interests of a vendor, the plaintiff must plead and prove special damages with particularity."  *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 9(g) ("If an item of special

---

[4]    The four elements to state a claim for "slander of title or product disparagement," otherwise known as "trade libel," are as follows: "(1) publication (2) with malice (3) of false allegations concerning plaintiff's property or product (4) causing special damages, i.e., pecuniary harm." *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977).

damage is claimed, it must be specifically stated."). "[T]he need to prove such special damages requires that [plaintiff] allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id.* (citations and internal quotation marks omitted); *Patel v. Soriano*, 369 N.J. Super. 192, 249 (App. Div.) *cert. denied*, 182 N.J. 141 (2004).

New Jersey courts, however, have not explicitly addressed whether investment income can qualify as damages under trade libel. But, the contours of such an element are not as narrow as Plaintiff claims them to be. According to Plaintiff's position, like its position on tortious interference, special damages can only be measurable, lost profits, and those profits, Plaintiff argues, must come from customers, not investors. Clearly, allegations of lost profits qualify as damages resulting from libelous conduct. *See Patel*, 369 N.J Super at 248-49. What is less clear is whether investment income could also qualify. On this point, Plaintiff merely points to cases that have dealt with lost profits, and argues that no decisions have permitted investment income as proof of special damages. However, none of the cases that Plaintiff has cited support its position; rather, having read the relevant decisions, particularly *Patel*, I do not find Plaintiff's arguments convincing.

*Patel*'s recitation of special damages in the context of libel is particularly broader than what Plaintiff claims. First, as a general matter, a party "alleging trade libel must prove publication of a matter derogatory to [that party's] property or business, of a kind designed to prevent others from dealing with [it] or otherwise to interfere with [its] relations with others." *Patel*, 369 N.J. Super at 246-47. Certainly, from that broad proposition, *Patel* does not foreclose the possibility that the damages requirement can be met by alleging that Plaintiff's libelous conduct prevented business investors from dealing with Defendant. This type of loss can amount to loss of business

opportunities, no matter if *profits* are not realized. Indeed, *Patel* goes on to explain that "pecuniary loss" is the touchstone of libel, *id.* at 247, not necessarily lost profits. In fact, under New Jersey law, all that a party needs to allege is a "pecuniary loss that has been realized *or* liquidated." *Id.* at 248 (emphasis added). While Plaintiff is correct that a type of liquidated loss is the loss of sales or the loss of prospective customers, that is only one method of showing damages. Under libel, Defendant, for the purposes of pleading, must identify particular "business interests who have refrained from dealing with [it] . . . ." *Id.* at 249. And, "business interests" engender the kind of investment income from investors who provide the necessary monetary capital for Defendant to develop its products. As such, the Magistrate Judge's decision in this regard is not clearly erroneous or contrary to law.

## IV.     Breach of Duty of Good Faith and Fair Dealing

In my prior Opinion, I dismissed Defendant's breach of good faith and fair dealing claim as duplicative of Defendant's breach of contract claim, reasoning that Defendant's allegations of bad faith all relate to Plaintiff's actions that form the bases of Defendant's breach of contract counterclaim. To cure the deficiencies, Defendant alleges that "Mileutis had reasonable, justifiable, and rightful expectations that [Intervet's] performance under the Agreements would be of acceptable quality and performed in a timely, competent, ethical and professional manner." AC, ¶ 174. However, Defendant avers that Intervet purposefully failed to meet those requirements in bad faith and concealed critical information from Defendant during the course of performing Intervet's obligations under the Agreements in an effort to undermine Defendant's business. *Id.* at ¶ 175. In that regard, Defendant claims that Intervet knowingly "did not make diligent efforts consistent with the usual commercial practices for obtaining permits, developing, commercializing and manufacturing the Products." *Id.* at ¶ 176.

In its AC, Defendant provides specific examples that it claims demonstrate bad faith on the part of Intervet. *See* AC, ¶¶ 38, 48, 55-56, 70-71, 83, 88-89, 104, 107-108, 110-114, 117-118, 120-121, 176. Without individually listing each of these instances, collectively, Defendant paints a picture that Intervet not only failed to perform its obligations under the contracts, but, more importantly, at every turn, Intervet purposefully and knowingly made strategic, bad faith decisions to undermine the parties' contractual relationship and to interfere with other Mileutis business ventures. The Magistrate Judge correctly found that these additional allegations elevated Defendant's contracted-related claims to a bad faith cause of action.

As I have explained in my prior Opinion, New Jersey law on this issue is clear: every contract includes an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). This covenant is independent of the duty to perform the express terms of the contract, and may be breached without a violation of the contract terms. *Sons of Thunder, Inc. v. Borden*, 148 N.J. 396, 423 (1997). There are "myriad forms of conduct that may constitute a violation of the covenant of good faith and fair dealing." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 225 (2005). For that reason, "[e]ach case is fact-sensitive." *Id.* As a general rule, "[a] plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *Id.* at 226 (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251, (2001)). "[P]roof of 'bad motive or intention' is vital to an action for breach of the covenant." *Id.* at 225 (citing *Wilson*, 168 N.J. at 251). However, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing a contracting party must allege that the accused acted in bad faith or engaged in 'some other form of inequitable conduct in the performance of a contractual obligation.'" *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-

11

5072, 2009 U.S. Dist. LEXIS 72796, at *34 (D.N.J. Aug. 18, 2009) (quoting *Black Horse*, 228

F.3d at 289). "[T]he breach of the implied covenant arises when the other party has acted

consistent with the contract's literal terms, but has done so in such a manner so as to have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]"

*Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002) (citations and quotations omitted). Thus, "a

'[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and

fair dealing [where] it would be duplicative of [its] breach of contract claim.'" *Adler Eng'rs, Inc.*

*v. Dranoff Props.*, No. 14-921, 2014 U.S. Dist. LEXIS 153497, *39 (D.N.J. Oct. 29, 2014) (quoting

*Hahn v. OnBoard LLC*, No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16,

2009)).

Here, Plaintiff, first, references various allegations in the AC that purport to be bad faith

conduct and argues that they are simply repackaged breach of contract assertions. For example,

Defendant alleges that Intervet "prevented the creation of a Development Plan under the License

Agreement by assigning a succession of reluctant and unqualified individuals to the Joint Advisory

Board. AC,¶¶ 38-39. Plaintiff contends that this allegation pertains to a breach of the License

Agreement and it does not amount to bad faith. Indeed, to allege bad faith, Defendant makes

various allegations that center on Plaintiff's obligations under the Agreements:

- "[Intervet] arbitrarily and unreasonably failed to make diligent efforts consistent with the usual commercial practices for obtaining permits, developing and manufacturing the Product." AC, ¶¶ 55-56, 176. "[Intervet] caused delays in research and development." *Id.* at ¶¶ 31-39, 50-53, 68-76, 94-95, 112-115, 138, 165.

- "[Intervet] failed to correct errors brought to its attention during the term of the Agreements." *Id.* at ¶¶ 104, 121-122.

- "[Intervet] decided to test an inadequate number of cows and assigned personnel lacking the necessary experience and education to properly conduct testing,

resulting in statistically insignificant and useless results." *Id.* at ¶¶ 70-71, 107-108, 110-114, 117-118.

- "[Intervet] refused to communicate with Mileutis after being advised that [Intervet]'s protocol was not on target." *Id.* at ¶ 88.

- "[Intervet] recklessly and carelessly misread significant data." *Id.* at ¶ 120.

- "[Intervet] incorrectly performed an analysis in the U.S. Clinical Study and [failed] to correct it when Mileutis brought it to its attention." *Id.* at ¶ 121.

While these assertions relate to Plaintiff's various alleged failures to perform under the contract, they also allege that Plaintiff has done so in "a manner so as to have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Wade*, 172 N.J. at 345. Indeed, bad motive or intent is critical in stating a claim of bad faith. In each of these above-referenced examples, Defendant not only alleges that Plaintiff has failed to carry out its duties under the contracts, but Plaintiff allegedly harbored "ill-motive" for doing so. According to Defendant, Plaintiff purposefully failed to correctly conduct, for example, clinical studies pursuant to the requirements of the parties' Agreements, because Intervet sought to interfere with Defendant's relationship with other third-parties, and all the while, depriving Defendant the fruit of the contracts. *See* AC, ¶ 175. And, more importantly, the genesis of Defendant's complaint of bad faith is that Intervet intended to "frustrate the purpose of the Agreements" by causing delays and performing its contractual duties in a subpar fashion. These allegations, contrary to Plaintiff's position, go above and beyond Defendant's breach of contract claim. Thus, I agree with the Magistrate Judge that Defendant has sufficiently alleged bad faith based on the manner in which Intervet performed its contractual obligations.

Additionally, Defendant attempts to establish bad faith by alleging the following specific conduct: 1) Intervet's refusal to present at a forum supported by the United States and Israeli governments, at the request of Mileutis; 2) Intervet unilaterally pursued work outside the United

States; 3) Intervet surreptitiously sought to develop a product in competition with Mileutis's uterine infection product; and 4) Intervet made false and disparaging statements to third parties. It is not necessary for me to discuss in detail each of those allegations, because I have already found that Defendant has sufficiently pled a bad faith claim. To address them briefly, Plaintiff argues that the parties' contracts do not require Plaintiff to present at the technological forum and that Plaintiff was not precluded by the Agreements from pursuing work outside of the country. Moreover, Plaintiff maintains that the alleged products that it developed were specifically permitted under the parties' Agreement. And, regarding the disparaging statements, Plaintiff takes issue with those allegations because, as Plaintiff puts it, they are simply rank speculations. Thus, according to Plaintiff, these specific alleged actions cannot form the bases of Defendant's bad faith claim.

I find that it is premature to dismiss those allegations from the AC, since those are factual issues to be resolved on summary judgment or at trial. I do not make any comment on whether Defendant can ultimately prevail on its bad faith claim. At this time, I concur with the Magistrate Judge's assessment that Defendant's newly asserted allegations, collectively, demonstrate a pattern of alleged misconduct on the part of Plaintiff that injured Mileutis's right to receive the benefit of the bargain under the Agreements; for the purposes of pleading, Defendant has met the requirements under case law. Accordingly, the Magistrate Judge did not clearly err when she found that Defendant has stated a claim for a breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal is **DENIED** and the Magistrate Judge's Order

dated August 18, 2016 is **AFFIRMED**.


Dated: April 27, 2017                                     /s/          Freda L. Wolfson
                                                          Freda L. Wolfson
                                                          United States District Judge